ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
CRUZ ORTIZ,                     :      AMENDED
                                :
              Petitioner        :      REPORT & RECOMMENDATION
                                :
         -against-              :      06 Civ. 6964 (CM) (MDF)
                                :
WILLIAM J. CONNOLLY,            :
Superintendent, Fishkill        :
Correctional Facility, and      :
THE ATTORNEY GENERAL OF THE     :
STATE OF NEW YORK,              :
                                :
              Respondents.      :
-------------------------------X
```

TO: THE HONORABLE Colleen McMahon, U.S.D.J.

Peitioner, pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254 to challenge his convictions for burglary in the 2nd degree (N.Y. Penal Law §140.25(2)), criminal possession of stolen property in the 5th degree (N.Y. Penal Law §140.35), and possession of burglary tools (N.Y. Penal Law §165.40). The Sullivan County Court, Judge La Buda, sentenced Petitioner as a second felony offender to concurrent terms of imprisonment, the longest of which is twelve (12) years. The Supreme Court, Appellate Division, Third Department affirmed the convictions. People v. Ortiz, 3 A.D.3d 594, 770 N.Y.S.2d 468 (3d Dep't 2004). Thereafter, the New York Court of Appeals denied Petitioner's application for an extension of time to file an application for leave to appeal, People v. Ortiz, 5 N.Y.3d 823, 804 N.Y.S.2d 37 (2005), and ensuing application for reargument. People v. Ortiz, 6 N.Y.3d 807, 812 N.Y.S.2d 446 (2006). The instant petition raises the same issue raised on direct appeal: whether his

statements to the police and the property recovered as a result of the statements should have been ruled inadmissable at trial as the result of the allegedly improper administration of Miranda warnings by the police.

### Statement of Facts

On May 21, 2001, as part of a burglary investigation, Investigator Norman Kantrowitz and New York State Trooper Jason Mattice went to Petitioner's apartment to interview him. A burglar had broken into the private residence of Ollen Eck and had removed a safe that contained a wedding ring, money roughly amounting to $5,000, and other important papers. Neighbors had provided the police with descriptions, one of which matched Petitioner's. Both neighbors observed two individuals approach the Eck residence, and one of them observed Petitioner return to an automobile with the safe. Another accomplice was waiting in the car.

On their request, Petitioner accompanied Kantrowitz and Mattice in a marked cruiser back to the State Police barracks in Liberty for questioning. Upon arrival at the barracks, Kantrowitz led Petitioner to an interview room where he gave Petitioner a "General 19" form. This form, which was offered into evidence at the suppression hearing, conveys the traditional Miranda warnings. At Kantrowitz's request, Petitioner read each line of the form aloud and initialed each passage or paragraph as he read it and then signed the form at the bottom. Kantrowitz

also asked Petitioner if he had fully understood what he had just read and signed, and Petitioner responded in the affirmative and expressed his desire to cooperate with the police. Kantrowitz then notarized the form, and in the subsequent interview Petitioner revealed his knowledge of the crime, his presence at the time the crime was committed, and the location of the proceeds of the burglary. After Kantrowitz reduced the statement to writing, Petitioner signed it and then took Kantrowitz and Mattice back to his house where he gave them the stolen money that remained in his possession.

Petitioner contended at the state trial court, as he does here, that to convey <u>Miranda</u> warnings properly, a police officer must read them to the interviewee, as opposed to having the interviewee read them aloud. After considering the testimony at the suppression hearing, the state trial court found that Petitioner had understood his rights and had waived them validly.

Following the conviction, Petitioner did not timely pursue his appeals. The Appellate Division reviewed his case by granting his motion for permission to file a late notice of appeal. Following the affirmance of the convictions on January 8, 2004, Petitioner had thirty (30) days to seek leave to appeal to the New York Court of Appeals, N.Y. Crim. Proc. Law §460.10 subd. 5, but did not submit an application, a request for extension of time to file a late application for leave to appeal, until July 25, 2005. The New York Court of Appeals denied this motion on September 15, 2005 and thereafter also denied his

3

motion to reargue on February 9, 2006.

## Discussion

Petitioner contends that when Investigator Kantrowitz failed to read the "General 19" to the petitioner, the requisite <u>Miranda</u> warning was not sufficiently given. According to Petitioner, there was no knowing or intelligent waiver of the right to remain silent nor the right to have an attorney present during questioning. As a result, the State did not meet its burden of proving that he had waived his rights, and any statement made by him as well as the money he gave to the police should have been suppressed.

Aside from the merits, the state contends that the statute of limitations bars this Court's consideration of the petition and that Petitioner's claim has been procedurally forfeited because he did not timely seek leave to appeal to the New York Court of Appeals.

Subdivision A of 28 U.S.C.A. §2244(d)(1) provides a one year statute of limitations which runs from the date when the judgment becomes final by the conclusion of direct review or upon the expiration of the time to seek direct review. Because Petitioner did not file his application for leave to appeal to the New York Court of Appeals within the statutorily prescribed period, N.Y. Crim. Proc. Law §460.10 subd. 5 (thirty (30) days), the statute of limitations expired on February 7, 2005, one (1) year and thirty (30) days after the convictions were affirmed. Contrary to

4

Petitioner's apparent but unstated belief or expectation, the New York Court of Appeals' denial of his application for leave to appeal did not restart nor revive the statute of limitations. See Smith v. McGinnis, 208 F.3d 13, 16-17 (2d Cir. 2000); Evans v. Senkowski, 228 F. Supp.2d 254, 260 (E.D.N.Y. 2002).

In response to Petitioner's claim, the State also has pled as a procedural default his untimely application for leave to appeal to the New York Court of Appeals. See Gray v. Netherland, 518 U.S. 152, 166, 116 S.Ct. 2074, 2082 (1996). To bar habeas review, a procedural default under state law must be strictly or regularly followed or applied. Stewart v. Smith, 536 U.S. 856, 860, 122 S.Ct. 2578, 2581 (2002) (*per curiam*); Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987 (1988). N.Y. Crim. Proc. Law §460.30 subd. 1 permits the New York Court of Appeals to grant an extension of time to file an application for leave to appeal if the motion is made within one year of the expiration of the time for filing a timely leave application. The existence of discretion in dealing with the application for leave to appeal does not change the consequence of the one year time limit. See Wedra v. Lefevre, 988 F.2d 334, 339-340 (2d Cir. 1993). Petitioner's motion to the New York Court of Appeals, Resp. Ex. E, merely requests that an extension be granted and does not mention the claim he raised at the Appellate Division. Accordingly, even though the New York Court of Appeals has not explicitly invoked the procedural default or one year statutory limit in the order which denied Petitioner's motion, the absence

of the claim in Petitioner's motion papers allows this Court to conclude that the denial was based on the late filing and not on a consideration of his claim. See Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 740-742, 111 S.Ct. 2546, 2557 n. 1, 2559-2569 (1991) (discussion therein).

In order to obtain federal habeas review of a procedurally defaulted claim Petitioner must demonstrate cause for the default and prejudice arising therefrom, as those terms have been defined by the United States Supreme Court, or that he is actually innocent of the offense for which he has been convicted. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591 (2000); Schlup v. Delo, 513 U.S. 298, 314-315, 115 S.Ct. 851, 860-861 (1995) (cases cited and discussion therein). In his motion for extension of time to file an application for leave to appeal Petitioner averred that counsel had allegedly filed a notice of appeal at his request. He attached a copy of a letter in which counsel advised him of his appellate option with respect to the Third Department's order. After an unspecified passage of time, Petitioner discovered that a notice of appeal had not been filed. Petitioner did not aver that his attorney had misled him about whether the notice of appeal had been filed, and in response, the State noted that counsel's letter specifically had requested direction and that Petitioner had not submitted a copy of his written direction to the attorney to file the notice of appeal. Resp. Ex. F ¶¶10-12. Petitioner's allegation, which may hint at faulting his attorney for the procedural default, does

not furnish "cause" for the default because the federal constitutional right to the effective assistance of appellate counsel does not extend to a discretionary appeal to the New York Court of Appeals. Chalk v. Kuhlmann, 311 F.3d 525, 528-529 (2d Cir. 2002), cert. denied sub nom. Chalk v. Walsh, 540 U.S. 990 (2003); Clark v. Oquendo, 452 F. Supp.2d 359, 369 (S.D.N.Y. 2006); see Diguglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (*per curiam*). Additionally, Petitioner has not alleged that he is actually innocent nor does the record suggest that he could do so.

Regardless of the procedural issues or obstacles, Petitioner is not entitled to relief on the merits. The proof developed at the pre-trial suppression hearing and Petitioner's having framed his argument on direct appeal on the assumption that the police officer testimony concerning the interview of Petitioner was true, Resp. Ex. at 6, supports the conclusion that the basic or historic facts, see Thompson v. Keohane, 516 U.S. 99, 109-110, 116 S.Ct. 457, 464 (1995), were not in dispute. Guidance for the standard which governs resolution of Petitioner's claim comes from Duckworth v. Eagan, 492 U.S. 195, 109 S.Ct. 2875 (1989):

> We have never insisted that *Miranda* warnings be given in the exact form described in that decision. [footnote omitted]. In *Miranda* itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." 384 U.S., at 476 (emphasis added). See also *Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 1687, 64 L.Ed.2d 297 (1980) (referring to "the now familiar *Miranda* warnings ... or

> their equivalent"). In *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), we stated that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Id.*, at 359, 101 S.Ct., at 2809....
>
> The prophylactic *Miranda* warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Reviewing courts therefore, need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda*." *Prysock, supra*, 453 U.S., at 361, 101 S.Ct., at 2810.

Id. at 202-203, 109 S.Ct. at 2880. If no precise verbal formulation is required to convey the substance of *Miranda* warnings, logic also dictates that no specific ceremony or ritual is required as long as the record supports the conclusion that the accused understood the warnings and voluntarily waived them.

In this case Petitioner accompanied Investigator Kantrowitz and Trooper Mattice back to the state police barracks. While there petitioner read aloud, initialed, and signed the "General 19" which informed him of his 5th Amendment rights against self-incrimination and contains <u>Miranda</u> warnings. He was asked if he understood his rights and indicated that he wished to cooperate. He then signed two statements that had been reduced to writing following this procedure. At no time did the petitioner ask for help in understanding what he was reading, and the record gives no indication that Petitioner had difficulty in understanding what he was reading. Accordingly, the oral recitation of the

8

warnings by the trooper would not have affected or otherwise altered a voluntary waiver of the rights.

Based on the foregoing, I respectfully recommend that your Honor dismiss this Petition.[1]

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (see Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Colleen McMahon , at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and

---

[1] Although Petitioner fully presented his claims herein pro se, he has requested appointment of counsel. Having thoroughly examined his claim, I have not found it to involve a complex legal or factual issue. Moreover, Petitioner has been fully able to express himself in writing. Consequently, I have determined that appointment of counsel would not be likely to lead to a more just determination in this case and have proceeded accordingly. See Cooper V. A. Sargenti Co., Inc., 877 F.2d 170 (2d Cir. 1989); Frazier V. Wilkinson, 842 F.2d 42, 47-47 (2d Cir.), cert. denied, 488 U.S. 842 (1988); Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986); Buitrago v. Scully, 705 F.Supp. 952, 957-958 (S.D.N.Y. 1989); McCarthy v. Bronson, 683 F.Supp. 880, 882 (D.Conn. 1988).

Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge McMahon. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (<u>per</u> <u>curiam</u>); <u>Wesolek v. Canadair, Ltd.</u>, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge McMahon and should <u>not</u> be made to the undersigned.

Dated: August ___, 2007
White Plains, New York

Respectfully submitted,

_____
Mark D. Fox
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

Hon. Colleen McMahon, U.S.D.J.

Mr. Cruz Ortiz (01-A-6373)
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

Bonnie M. Mitzner, Esq.
Assistant District Attorney
Sullivan County Courthouse
414 Broadway
Monticello, New York 12701